# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

RON WASHINGTON, )
)
        Plaintiff, )    Case No. 3:19-cv-00154
)     Judge William L. Campbell, Jr.
v. )
)
EQUIFAX, )
)
        Defendant. )

## DECLARATION OF MARGARET LESLIE

I, Margaret Leslie, hereby make this declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am over the age of twenty-one and otherwise competent to testify to the matters stated herein.

2.     I am currently employed as Vice President of Legal by Equifax, Inc., the parent company of Defendant Equifax Information Services, LLC ("Equifax"), and formerly worked for Equifax.

3.     Before assuming my current position, I was Equifax's Vice President of Core Data Platforms Technology from March 2007 to February 2015. In that capacity, I was responsible for Equifax's consumer credit reporting system and the system involved in credit recording, storing and retrieving credit reports.

4.     I have personal knowledge of the facts stated herein based on my work experiences at Equifax since 1990 and my review of documents and records kept by Equifax in the ordinary course of its business.

5. I have reviewed Equifax's records concerning the credit file of Plaintiff Ron Washington.

6. I have also reviewed the Plaintiff's Complaint (filed on the Court's docket as Document 1-1) and am generally familiar with the allegations made therein.

7. I am familiar with Equifax's documents and records including: (1) documents submitted from various "data furnishers" (including banks, credit unions, consumer credit card companies, retailers, collection agencies, and court records), and (2) documents (including dispute letters and documents submitted with disputes) submitted by consumers.

8. I have personal knowledge of Equifax's procedures for creating these records.

9. I use these document systems and these records frequently as part of my job. These documents are kept in the course of Equifax's regularly conducted business activities.

10. I am authorized to provide this declaration in support of Equifax's Motion for Summary Judgment.

## I. EQUIFAX IS A CONSUMER REPORTING AGENCY.

11. Equifax is a consumer reporting agency ("CRA") as defined by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

12. As such, it gathers information about consumers from furnishers which it uses to create credit files on more than 200 million consumers, including the plaintiff in this case, Mr. Washington.

13. Equifax uses those files to prepare consumer reports for use by its subscribers in evaluating the potential credit risk of consumers, among other permissible purposes.

2

## II. EQUIFAX MAINTAINS REASONABLE PROCEDURES TO CLEARLY AND ACCURATELY DISCLOSE INFORMATION IN A CONSUMER'S FILE TO THE CONSUMER.

14. Equifax maintains and follows procedures designed to clearly and accurately disclose to a consumer all information in the consumer's file at the time of the consumer's request.

15. Equifax accepts credit information only from those data furnishers that it has determined to be reasonably reliable based upon Equifax's own investigation, the source's reputation in the community, and/or Equifax's longstanding business relationship with it.

16. Monterey Financial Services LLC ("MFS"), formerly Monterey Financial Services Inc., does business as "Monterey Collections" and "Monterey Collection Services," is one such entity.

17. When Equifax receives a request from a company to become a data furnisher and user of Equifax's credit information, Equifax generally conducts an extensive investigation to ensure that the company is reasonably reliable.

18. Each company must complete a detailed application and sign a subscriber agreement, which generally requires the company to certify that it will obtain consumer reports only in accordance with permissible purposes under the FCRA and that it will otherwise comply with all FCRA requirements, including the requirement that it provide accurate information and investigate consumer disputes.

19. Upon receipt of an application, subscriber agreement, and valid business license, Equifax's new-accounts department conducts an investigation of the company, which may include an onsite visit, to determine the company's legitimacy and reliability.

20. Equifax's standard data-furnisher contract requires data furnishers to provide accurate data and to update the data regularly.

3

21. The FCRA also requires data furnishers to provide accurate information and to verify information when requested to do so.

22. Generally, furnishers and other sources of information report credit information and update the credit history of consumers on a monthly basis through bulk transfer of electronic data to Equifax.

## III. EQUIFAX OBTAINS CONSUMER CREDIT INFORMATION FROM DATA FURNISHERS IN A STANDARD ELECTRONIC FORMAT.

23. Metro 2 is a standard electronic data reporting format created by the Consumer Data Industry Association ("CDIA") for data furnishers to report consumers' information to consumer reporting agencies electronically and in a standardized format.

24. The data specification is extensive and is designed to standardize a wide range of credit history information while complying with federal laws and regulations in credit reporting, such as the Fair Credit Reporting Act (FCRA), the Fair Credit Billing Act (FCBA), and the Equal Credit Opportunity Act (ECOA).

25. In general, Metro 2 uses a 426-byte Base Segment format, and additional segments (e.g., J1, J2) that may be appended as appropriate, to transmit a consumer data record from a data furnisher to a consumer reporting agency. Metro 2 segments assign specific fields, composed of specific byte positions, to specific functions. Attached hereto as Exhibit A are the field definitions for the two fields relevant to this case, Field 6 and Field 7 of a Metro 2 Base Segment (descriptions of technical details and security measures are redacted for security purposes) (EIS-WASHINGTON-000327).

26. Field 6, the Cycle Identifier, in the 426-byte Base Segment format is composed of two alphanumeric characters at positions 41-42. A Cycle Identifier is an internal code used by

4

data furnishers that report by billing cycles, as opposed to month-end reporting, so that reporting takes place at the end of each billing cycle.

27. Cycle reporting is generally appropriate when the data furnisher has multiple billing cycles. Such data furnishers often send massive amounts of data to Equifax, and divide the data into subsets by cycle, which are spread out for processing over a month to smooth out the load on their system and Equifax's system.

28. Cycle Identifiers are used for this processing function, are not considered part of an account number, and are not included in consumer reports that Equifax furnishes to its customers.

29. Field 7, the Consumer Account Number, in the 426-byte Base Segment format is composed of 30 alphanumeric characters at positions 43-72.

30. The raw input record submitted by MFS to Equifax on May 31, 2019, shows two digits (11) in the "Cycle Identifier" field of the Metro 2 data (which starts at position 41 and is 2 bytes long) and shows nine digits (XXXXX8078) in the "Consumer Account Number" field of the Metro 2 data (which starts at position 43 and is 30 bytes long). (EIS-WASHINGTON-000324-000326 attached as Exhibit B).

31. Accordingly, MFS reported the MFS Account number to Equifax using nine of the possible 30 characters in the Consumer Account Number field, and Equifax reported the same nine characters to Mr. Washington. (EIS-WASHINGTON-000324 through EIS-WASHINGTON-000326).

32. Identity theft is a significant problem.

33. Consumer reporting agencies have developed practices to help combat this increasing problem.

5

34. One of the methods of combating identity theft is for the consumer reporting agency to truncate account numbers before the report is mailed to the consumer.

35. Truncating a consumer's account number is a reasonable procedure to protect the consumer's information from potential identity theft.

36. Truncating a consumer's account number endeavors to make intercepted credit file disclosures less useful to potential identity thieves while continuing to allow consumers to recognize their accounts.

37. Equifax never acted to willfully harm Mr. Washington or his credit file, or to violate the FCRA or any other laws in relation to Mr. Washington.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 31st day of January, 2020, at Atlanta, Georgia.

By: _____
Margaret Leslie

6