# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| RON WASHINGTON, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cv-00154 |
| ) | Judge Campbell/Frensley |
| EQUIFAX, ) | |
|     Defendant. ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

In this Fair Credit Reporting Act ("FCRA") matter, Ron Washington alleges that Equifax Information Services LLC ("Equifax") violated the FCRA by listing a bankruptcy on his credit report and by including an inaccurate account number on his report. Docket No. 1-1; 15 U.S.C. §§ 1681-1681x. Equifax previously filed a Motion to Dismiss, which was granted as to Mr. Washington's claim under 15 U.S.C. § 1681(a)(2) regarding the listing of a bankruptcy on his report, and denied as to his claim under 15 U.S.C. § 1681g as to the allegedly inaccurate account number. Docket Nos. 4, 9, 12. This matter is now before the Court upon Equifax's Motion for Summary Judgment on the remaining claim, which relates solely to whether the credit report Equifax furnished to Mr. Washington accurately reflects his Monterey Financial Services LLC ("MFS") account number.[1] Docket No. 25. Equifax has also filed a Statement of Undisputed Material Facts, the Declaration of Margaret Leslie, Metro 2 Field Definitions, Raw Input Record Submitted by MFS to Equifax, and a Supporting Memorandum of Law. Docket Nos. 26, 26-1, 26-

---

[1] MFS was formerly known as Monterey Financial Services, Inc., and does business as "Monterey Collections" and "Monterey Collection Services." Docket No. 26, ¶ 6.

2, 26-3, 27.

Mr. Washington has filed a Response in Opposition. Docket No. 28. He has also filed an "Opposition to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment" and an "Opposition to Defendant['s] Statement of Undisputed Material Facts in Support of Defendant['s] Motion for Summary Judgment." Docket Nos. 30, 31. Equifax has filed a Reply in Support of its Motion for Summary Judgment and a Reply Statement of Undisputed Material Facts. Docket Nos. 32, 33. For the reasons set forth below, the undersigned recommends that Equifax's Motion for Summary Judgment (Docket No. 25) be GRANTED.

## II. FACTS

### A. Undisputed Facts[2]

Equifax is a consumer reporting agency ("CRA") as defined by the FCRA. Docket Nos. 26, ¶ 1; 31, p. 2. As such, it gathers information about consumers from furnishers which it uses to create credit files on more than 200 million consumers, including Mr. Washington. Docket Nos. 26, ¶ 2; 31, p. 2. Equifax uses those files to prepare consumer reports for use by its subscribers in evaluating the potential credit risk of consumers, among other permissible purposes. Docket No. 26, ¶ 3. Equifax accepts credit information only from those data furnishers that it has determined to be reasonably reliable based upon Equifax's own investigation, the source's reputation in the community, and/or Equifax's longstanding business relationship with it. *Id.* at ¶ 5.

When Equifax receives a request from a company to become a data furnisher and user of Equifax's credit information, Equifax generally conducts an extensive investigation to ensure that

---

[2] The following facts are undisputed, as acknowledged in Equifax's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (Docket No. 26), Mr. Washington's Opposition to [Equifax's] Statement of Undisputed Material Facts in Support of [Equifax's] Motion for Summary Judgement [*sic*] (Docket No. 31), and Equifax's Reply Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (Docket No. 33).

2

the company is reasonably reliable. *Id.* at ¶ 7. Each company must complete a detailed application and sign a subscriber agreement, which generally requires the company to certify that it will obtain consumer reports only in accordance with permissible purposes under the FCRA and that it will otherwise comply with all FCRA requirements, including the requirement that it provide accurate information and investigate consumer disputes. *Id.* at ¶ 8. Upon receipt of an application, subscriber agreement, and valid business license, Equifax's new-accounts department conducts an investigation of the company, which may include an onsite visit, to determine the company's legitimacy and reliability. *Id.* at ¶ 9.

Equifax's standard data-furnisher contract requires data furnishers to provide accurate data and to update the data regularly. *Id.* at ¶ 10. The FCRA also requires data furnishers to provide accurate information and to verify information when requested to do so. *Id.* at ¶ 11. Generally, furnishers and other sources of information report credit information and update the credit history of consumers on a monthly basis through bulk transfer of electronic data to Equifax. *Id.* at ¶ 12. The data specification is extensive and is designed to standardize a wide range of credit history information while complying with federal laws and regulations in credit reporting, such as the Fair Credit Reporting Act, the Fair Credit Billing Act, and the Equal Credit Opportunity Act. Docket No. 26, ¶ 14.

"Metro 2" is an electronic data format created by the Consumer Data Industry Association for data furnishers to report consumers' information to consumer reporting agencies electronically. *Id.* at ¶ 14. In general, Metro 2 uses a 426-byte Base Segment format, and additional segments (e.g., J1, J2) that may be appended as appropriate, to transmit a consumer data record from a data furnisher to a consumer reporting agency. *Id.* at ¶ 15. Metro 2 segments assign specific fields, composed of specific byte positions, to specific functions. *Id.* at ¶ 16. Equifax has filed, as Exhibit

A to Ms. Leslie's Declaration, the field definitions for the two fields relevant to this case, Field 6 and Field 7, of a Metro 2 Base Segment (descriptions of technical details and security measures are redacted for security purposes) (EIS-WASHINGTON-000327). *Id.*, *citing* Docket No. 26-2.

Field 6, the Cycle Identifier in the 426-byte Base Segment format is composed of two alphanumeric characters at positions 41-42. *Id.* at ¶ 17. A Cycle Identifier is an internal code used by data furnishers that report by billing cycles, as opposed to month-end reporting, so that reporting takes place at the end of each billing cycle. *Id.* at ¶ 18. Cycle reporting is generally appropriate when the data furnisher has multiple billing cycles. Such data furnishers often send massive amounts of data to Equifax, and divide the data into subsets by cycle, which are spread out for processing over a month to smooth out the load on their system and Equifax's system. *Id.* at ¶ 19. Cycle Identifiers are used for this processing function, are not considered part of an account number, and are not included in consumer reports that Equifax furnishes to its customers. *Id.* at ¶ 20.

Field 7, the Consumer Account Number in the 426-byte Base Segment format is composed of 30 alphanumeric characters at positions 43-72. *Id.* at ¶ 21. The raw input record submitted by MFS to Equifax on May 31, 2019, shows two digits (11) in the "Cycle Identifier" field of the Metro 2 data (which starts at position 41 and is 2 bytes long) and shows nine digits (XXXXX8078) in the "Consumer Account Number" field of the Metro 2 data (which starts at position 43 and is 30 bytes long). (EIS-WASHINGTON-000324-000326 attached to the Leslie Declaration as Exhibit B). *Id.* at ¶ 22, *citing* Docket No. 26-3. Accordingly, MFS reported the MFS Account number to Equifax using nine of the possible 30 characters in the Consumer Account Number field, and Equifax reported the same nine characters to Mr. Washington. (EIS-WASHINGTON-000324 through EIS-WASHINGTON-000326). *Id.* at ¶ 23, *citing* Docket No. 26-3.

Identity theft is a significant problem. *Id.* at ¶ 24. Consumer reporting agencies have developed practices to help combat this increasing problem. *Id.* at ¶ 25. One of the methods of combating identity theft is for the consumer reporting agency to truncate account numbers before the report is mailed to the consumer. *Id.* at ¶ 26. Truncating a consumer's account number endeavors to make intercepted credit file disclosures less useful to potential identity thieves while continuing to allow consumers to recognize their accounts. *Id.* at ¶ 28.

**B.     Disputed Facts**

The Parties dispute the exact number of consumers for whom Equifax gathers information. Docket Nos. 26, ¶ 2; 31, p. 2. They also dispute whether Equifax maintains reasonable procedures to clearly and accurately disclose information. Docket Nos. 26, ¶ 4; 31, p. 2. While Equifax asserts that Metro 2 is a standard electronic data reporting format that allows reporting agencies to report consumers' information electronically and in a standardized format, Mr. Washington contends that Metro 2 is not a standard electronic format, arguing that it is inconsistent and inaccurate. Docket No. 26, ¶ 13; Docket No. 31, p. 2. The Parties also disagree as to whether MFS is reasonably reliable. Docket No. 26, ¶ 6; Docket No. 31, p. 2.

It is not entirely clear whether the Parties agree that truncating a consumer's account number is a reasonable procedure to protect the consumer's information from potential identity theft, as Equifax asserts. Docket No. 26, ¶ 27. In response, Mr. Washington contends that "there is a differen[ce] from truncating/short[en]ing account numbers verses [*sic*] a consumer contacting the defendant about an inaccuracy on their credit report and the defendant never respon[ds] within the 15 days in accordance with the FCRA." Docket No. 31, p. 3.

Finally, the Parties dispute the issue of whether Equifax acted willfully, with Equifax asserting that it never acted to willfully harm Mr. Washington or his credit file, or to violate the

5

FCRA or any other laws in relation to Mr. Washington, and Mr. Washington responding that Equifax "acted willfully and intentionally because [Equifax] did not respond to any of [his] certified letters that were sent to [Equifax] . . . ." Docket No. 26, ¶ 29; Docket No. 31, p. 3.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party bringing the motion has the burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute of material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the nonmoving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.* A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to allow the nonmoving party's claims to survive summary judgment;

rather, the nonmoving party must convince the Court that there is sufficient evidence for a juror to return a verdict in its favor. *Id.*

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Further, "a Court cannot create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011).

### B. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Equifax filed its Motion on February 3, 2020. Docket No. 25. Mr. Washington did not file his Response until March 3, 2020, more than twenty-one days later. Docket No. 28. On that same day, he filed "Plaintiff['s] Explanation of Why Submitting the Opposition to Summary of Judgement Now." Docket No. 29. In that document, Mr. Washington states that:

> 1. Plaintiff was not aware that the defendant had filed this Motion and was out of state. In Virginia and North Carolina for business that were [*sic*] previously scheduled.
>
> 2. Once the plaintiff returned home and checked his mail, he immediately started to work on his reply to the motion.
>
> 3. Plaintiff ask[s] the court to allow the Opposition/the plaintiff['s] reply to be entered since he was not informed or received the documents until after he

7

returned.

*Id.* at 1-2. The Court accepts Mr. Washington's account of these events, and in light of his pro se status, will allow his Response in Opposition and related documents to stand.

With respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record . . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Mr. Washington filed an Opposition to Equifax's Statement of Undisputed Material Facts. Docket No. 31. But he did not respond in the manner prescribed by L.R. 56.01(g). *See id.* Specifically, he did not respond to each fact as set forth by Equifax or support each disputed fact by a citation to the record. *Id.* Further, his manner of organizing the material in his Opposition makes it difficult to determine which of Equifax's facts he is addressing; however, because he is proceeding pro se, the Court has attempted to determine which of the facts set forth by Equifax are disputed by Mr. Washington, and which are truly undisputed.

### C. Standing

The judicial power of federal courts is limited to deciding "Cases" and "Controversies." U.S. Const. art. III, § 2. Therefore, the courts can only resolve actual, concrete disputes. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). To be an actual, concrete dispute, the plaintiff must have standing, which means that he or she: (1) suffered an injury; (2) traceable to the defendant; (3) that

8

a judicial decision could redress. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The plaintiff's injury must be an "injury in fact," meaning that it must be "real, not abstract, actual, not theoretical, concrete, not amorphous." *Huff v. Telecheck Servs.*, 923 F.3d 458, 462 (6th Cir. 2019), *citing Spokeo v. Robins*, 136 S. Ct. at 1548.

Regarding procedural violations of the FCRA, the Supreme Court has held that some violations may not rise to the level of an injury in fact. *See Spokeo*, *supra* (remanding to the Ninth Circuit for a determination of whether the plaintiff sustained a concrete injury). In *Spokeo*, the Court noted that:

> A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

136 S. Ct. at 1550.

At the summary judgment stage, the plaintiff cannot rest on allegations alone, but must set forth evidence demonstrating standing. *Huff v. Telecheck Servs.*, 923 F.3d at 462. The burden of establishing standing rests with the plaintiff, who must provide the allegations or evidence required at each stage of the litigation. *Lujan*, 504 U.S. at 561.

### D. The Fair Credit Reporting Act

Section 609 of the FCRA states, in pertinent part:

**(a)** . . . Every consumer reporting agency shall, upon request, and subject to section 610(a)(1) [15 USCS § 1681h(a)(1)], clearly and accurately disclose to the consumer:

> **(1)** All information in the consumer's file at the time of the request, except that –
>
> > **(A)** if the consumer to whom the file relates requests that

> the first 5 digits of the social security number (or similar identification number) of the consumer not be included in the disclosure and the consumer reporting agency has received appropriate proof of the identity of the requester, the consumer reporting agency shall so truncate each number in such disclosure . . . .

15 U.S.C. § 1681g ("Disclosures to consumers").

"A consumer is authorized to bring suit for willful or negligent violations of the responsibilities enumerated by the statute." *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004), *citing* 15 U.S.C. §§ 1681n, 1681o. "[T]he FCRA does not impose strict liability for incorrect information appearing on an agency's credit reports." *Id.*, *citing Spence v. TRW, Inc.*, 92 F.3d 380, 382-83 (6th Cir. 1996). Willfulness in this context has been found to include both intentional and reckless violations of the law. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007). "Thus, a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

### E. The Case at Bar

Equifax argues that Mr. Washington lacks standing because he does not have an injury in fact that is traceable to Eqiufax's alleged violation of § 1681g of the FCRA. Docket No. 27, p. 6-9. The Court agrees that Mr. Washington has not adduced any evidence of injury related to this matter.

As this Court has previously noted, Mr. Washington has not filed a traditional complaint, but rather, "a series of letters and attached documents that comprise his correspondence with Equifax over the course of several months." Docket No. 9, p. 3-4, *citing* Docket No. 1-1. The only place within these letters and documents where Mr. Washington alleges an injury is in a letter to

Equifax, stating that "[Equifax's] improper procedures are highly damaging to my credit score." Docket No. 1-1, p. 13. The Complaint does not elaborate on this assertion. *See id.* In his Response in Opposition, Mr. Washington alleges that Equifax's actions caused him "to be denied credit multiple times." Docket No. 30, p. 2. Regarding the issue of standing specifically, Mr. Washington states that:

> Plaintiff dispute[s] the defendant's statement that plaintiff lacks standing because he doesn't have any evidence to demonstrate that he suffered any injury that is traceable to the alleged violation. The plaintiff argues that in accordance with TN Code 29-39-104 plaintiff [has] shown facts that the defendant acted intentionally and the defendant had wrongdoing.

Docket No. 30, p. 2, *citing* Tenn. Code Ann. §29-29-104 (Punitive Damages).

Mr. Washington seems to argue that he was injured by Equifax's failure to respond to his letters (upon which he bases his claim of intentional and willful conduct), or by the simple fact that his MFS account number appears to lack two digits on the Equifax credit report he received. *See* Docket Nos. 31, p. 3; 1-1, p. 3-4. But, Mr. Washington has not connected either of these to any actual injury. *See id.* He has not offered any evidence that Equifax's procedures damaged his credit score or that he has been denied credit multiple times (or even one time). Accordingly, the Court cannot conclude that he has placed any evidence into the record that he has suffered an injury in fact. Because there is no evidence of any injury, there is necessarily no evidence that any injury is traceable to Equifax's conduct. Therefore, two of the three necessary elements of standing are missing in this case. Mr. Washington has failed to meet his burden of demonstrating that he has standing, and the Court should dismiss his claim on that basis.

Even if Mr. Washington had standing to bring this claim, he has not provided any evidence to substantiate it from which a reasonable jury could find in his favor. *See Liberty Lobby*, 477 U.S. at 248. His one remaining claim in this action is brought under 15 U.S.C. § 1681g and alleges

11

that his Equifax credit report fails to display two digits that belong at the beginning of his MFS account number. Docket No. 1-1, p. 13. Mr. Washington asserts that "[a]ccording to FTC opinion states [*sic*] by not reporting the entire account number, then your company are [*sic*] not reporting 100% accurate information as required by 609 of the Fair Credit Reporting Act." *Id.*

Equifax contends that it has not violated the FCRA for several reasons. First, Equifax maintains that it reported Mr. Washington's MFS account number to him exactly as that number was furnished to Equifax by MFS. Docket No. 27, p. 14-15. Thus, Equifax argues that it has not failed to clearly and accurately disclose to Mr. Washington all of the information is his file at the time of the request as mandated by § 1681g. *Id.* Second, Equifax asserts that the digits that are missing from the MFS account number on the report Equifax sent to Mr. Washington are not truly part of his account number at all. *Id.* at 15-16. Instead, those digits are the "Cycle Identifier" that is "an internal code used by data furnishers [such as MFS] that report by billing cycles." *Id.* at 15. Third, regardless of the reason for omitting the first two digits, Equifax contends that truncation of account numbers in reports sent to consumers does not violate the FCRA, but rather, is a reasonable measure taken to protect consumers' information from potential identity theft. *Id.* at 11-13. Finally, Equifax denies engaging in any negligent or willful actions with regard to Mr. Washington. *Id.* at 16-18.

The undisputed facts demonstrate that cycle reporting is generally appropriate when a data furnisher (such as MFS) has multiple billing cycles. Docket No. 26, ¶ 19. Such data furnishers often send massive amounts of data to Equifax, and divide the data into subsets by cycles, which are spread out for processing over a month to smooth out the load on their system and Equifax's system. *Id.* Cycle Identifiers are used for this processing function, are not considered part of an account number, and are not included in consumer reports that Equifax furnishes to its customers.

*Id.* at ¶ 20. Mr. Washington has not provided any evidence to the contrary. *See* Docket Nos. 1-1, 28, 30, 31. Therefore, there is an absence of evidence to support his contention that the two digits not included on Equifax's report are part of his MFS account number, rather than a code attached by MFS for the purpose of identifying the batch of data sent from MFS to Equifax. *See Rodgers*, 344 F. 3d at 595.

It is an undisputed fact that the raw input record submitted by MFS to Equifax on May 31, 2019, shows two digits (11) in the "Cycle Identifier" field and nine digits in the "Consumer Account Number" field. Docket No. 26, ¶ 22. It is further undisputed that accordingly, MFS reported the MFS account number to Equifax using nine of the possible characters in the Consumer Account number field, and Equifax reported the same nine characters to Mr. Washington. *Id.* at ¶ 23. Mr. Washington has not provided any evidence to the contrary. *See* Docket Nos. 1-1, 28, 30, 31. Thus, there is an absence of evidence to support Mr. Washington's contention that Equifax violated the FCRA by failing to disclose all information in his file.

Drawing all reasonable inferences in favor of Mr. Washington, the undersigned must still conclude that he has not made a showing sufficient to establish that Equifax failed to clearly and accurately disclose all of the information in his file as required by § 1681g. In addition to failing to provide any evidence of an injury, as discussed above, he has failed to provide any evidence, beyond the pleadings, upon which a reasonable jury could return a verdict in his favor on the claim itself. *See Liberty Lobby*, 477 U.S. at 248. Because Mr. Washington has not adduced evidence to establish essential elements of his claim, it is unnecessary to address the broader societal questions raised here regarding the prevalence of identity theft and the suitability of account number truncation as a preventive measure.

Finally, Mr. Washington has not offered sufficient evidence from which a reasonable jury

could conclude that Equifax acted negligently or willfully in failing to provide him with the two digits at issue. His assertion that Equifax "acted willfully and intentionally because [Equifax] did not respond to any of [his] certified letters that were sent to [Equifax]" is insufficient by itself to allow a jury to reasonably conclude that Equifax's action in not reporting the MFS Cycle Identifier was "not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *See Safeco*, 551 U.S. at 69.

### III. CONCLUSION

For the foregoing reasons, the undersigned find that there is no genuine dispute as to any material fact and Equifax is entitled to a judgment as a matter of law. Therefore, the Court recommends that Equifax's "Motion for Summary Judgment" (Docket No. 25) be GRANTED and that the Court dismiss this action with prejudice.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**